**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Matthew Elonis and Theodore Elonis,<br><br>Plaintiffs,<br><br>v.<br><br>CFT Solutions, LLC, FxWinning Limited, Renan de Rocha Gomes Bastos, Rafael Brito Cutie, Roman Cardenas, Wandy Toussaint, Sazedul Khan, and Yvenson Israel<br><br>Defendants. | Civil Action No. 2:23-cv-2664<br><br>JURY TRIAL DEMANDED |

## VERIFIED COMPLAINT

Plaintiffs, Matthew Elonis and Theodore Elonis (collectively, the "Elonis Brothers" or the "Plaintiffs"), by and through their undersigned attorneys, commence this action against CFT Solutions, LLC ("CFT"), FxWinning Limited ("FxWinning," and together with CFT, the "Companies"), Renan de Rocha Gomes Bastos ("Bastos"), Rafael Brito Cutie ("Cutie"), Roman Cardenas ("Cardenas"), Wandy Toussaint ("Toussaint"), Sazedul Khan ("Khan"), and Yvenson Israel ("Israel," and together with the Companies, Bastos, Cutie, Cardenas, Toussaint, and Khan, the "Defendants"), and allege as follows:

## PRELIMINARY STATEMENT

1.      The Companies have wrongfully held—and continue to wrongfully hold—over $70,000.00 belonging to the Elonis Brothers.

2.      The Companies engaged in a scheme to solicit investors like the Elonis Brothers, who, in the fall of 2022, fell prey to the scheme and invested more than $110,000 in a brokerage account with the Companies.

1

3.      As part of the scheme, the Companies offered complementary services.  CFT promised that, by opening an account with FxWinning, investors could access CFT's high-frequency trading system, which purportedly enabled traders "to execute a large number of orders at extremely high speeds, detecting emerging trends in a fraction of a second," allowing traders to "make profits even with very small price fluctuations."[1]  For its part, FxWinning held itself out as a brokerage firm, which partnered with CFT to provide its clients access to CFT's "powerful" investment platform.[2]

4.      Upon information and belief, the Companies are controlled by the same group of individuals, including Defendants Bastos, Cutie, and Cardenas.  The Companies' scheme relies on promoters, such as Defendants Toussaint, Khan, and Israel who solicit investments from potential investors.

5.      Relying on Defendants' representations, the Elonis Brothers invested more than $110,000 in the Companies.

6.      Despite repeated requests to withdraw the funds—withdrawals the Elonis Brothers are entitled to make under the terms of the investment—Defendants have evaded or refused all requests with a litany of excuses.

7.      The Elonis Brothers bring this action (the "Action") to recover their wrongfully withheld funds and to seek damages.

## PARTIES

8.      Plaintiff Matthew Elonis is an individual over the age of eighteen who resides in the Eastern District of Pennsylvania.

---

[1] CFT Solutions, Common Questions Page, https://www.cftsolutions.info/perguntas-frequentes?lang=en (last visited July 7, 2023).

[2] FxWinning Net, Home Page, https://fxwinning.net/index_en.html (last visited July 7, 2023).

9.      Plaintiff Theodore Elonis is an individual over the age of eighteen who resides in New Jersey.

10.     Defendant CFT Solutions, LLC is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida.

11.     Upon information and belief, Defendant FxWinning Limited is a Hong Kong limited company, which is registered under number 2930110.  Upon information and belief, FxWinning operates without a principal place of business.  FxWinning's website lists locations in Hong Kong and Saint Vincent and the Grenadines but provides a contact number with a Cyprus country code.  Upon information and belief, FxWinning maintains a workspace in Cyprus, a workspace in Dubai where its Chief Executive Officer operates the company, and a workspace in Miami-Dade County, Florida, where FxWinning's vice president assists FxWinning's Chief Operating Officer with operating the company.

12.     Upon information and belief, Defendant Renan de Rocha Gomes Bastos is an individual over the age of eighteen who resides in Miami-Dade County, Florida.

13.     Upon information and belief, Rafael Brito Cutie is an individual over the age of eighteen who resides partially in Miami-Dade County, Florida, partially in Dubai, partially in the United Arab Emirates, and partially in Cyprus.

14.     Upon information and belief, Defendant Roman Cardenas is an individual over the age of eighteen who resides in Miami-Dade County, Florida.

15.     Upon information and belief, Defendant Wandy Toussaint is an individual over the age of eighteen who resides in Pompano Beach, Florida.

16.     Upon information and belief, Defendant Sazedul Khan is an individual over the age of eighteen who resides in Pompano Beach, Florida.

17.     Upon information and belief, Defendant Yvenson Israel is an individual over the age of eighteen who resides in Miami-Dade County, Florida, Pompano Beach, Florida, or Coral Springs, Florida.

## JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction over this Action pursuant to 28 U.S.C. § 1331 because the case arises, in part, under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

19.     This Court has supplemental jurisdiction over the state law claims in this Action pursuant to 28 U.S.C. § 1367 because such claims are so closely related to the Exchange Act claim that they are part of the same case and controversy.

20.     This Court also has subject-matter jurisdiction over this Action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000,00, exclusive of interest and costs.

21.     Personal jurisdiction exists over Defendants because this dispute arises out of, or is related to, the Defendants' contacts with this forum.  Defendants have purposefully conducted business in Pennsylvania by soliciting investments from individuals residing in Pennsylvania and have caused harm in Pennsylvania.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the acts that form the basis of this Action occurred in this district.

## STATEMENT OF FACTS

**A.     CFT – An Elusive High-Frequency Trading System**

23.     CFT holds itself out as a technology company.  It purports to offer investors a "High-Frequency Trading System," which "use[s] [] high-power computers, . . . to execute a large

number of orders at extremely high speeds, detecting emerging trends in a fraction of a second."[3] This high-frequency trading system allows "traders [to] make profits even with very small price fluctuations."[4]

24.    The software allegedly trades on the foreign exchange ("Forex") market.

25.    According to CFT, investors gain access to CFT's software by opening an account with FxWinning, which purports to be a broker.  Through the FxWinning brokerage account, the investor can access CFT's software.

26.    CFT executive Bastos represented to Theodore Elonis that CFT has partnered with FxWinning as CFT's designated broker and account manager.

**B.    FxWinning – A Forex Brokerage Facilitating Investments with CFT**

27.    According to its website, FxWinning is "a young company, created in early 2020, which offers a "powerful [] trading platform" "exclusive . . . to retail and institutional clients around the world."[5]  It also describes itself as a "brokerage firm,"[6] which claims to provide "a great team with abundant experience in the financial market, crypto currencies, expert advisors, etc." that "will guarantee you the best spreads and trading conditions."[7]

28.    FxWinning further represents that it "has purchased Client Money Insurance (CMI) on behalf of our clients and is a member of a network of responsible global financial service providers offering additional layers of security."[8]

_____

[3] CFT Solutions, Common Questions Page, *supra* note 1.

[4] CFT Solutions, Common Questions Page, *supra* note 1.

[5] FxWinning Net, Home Page, *supra* note 2.

[6] FxWinning Net, News Page, https://www.fxwinning.pro/news?lang=en (last visited July 7, 2023).

[7] FxWinning Net, Home Page, *supra* note 2.

[8] FxWinning Net, Home Page, *supra* note 2; FxWinning Pro, Home Page, https://www.fxwinning.pro/?lang=en (last visited July 7, 2023).

29.     Defendants represented that once an FxWinning account is set up and funded, the Elonis Brothers could access CFT's software and engage in Forex trading.

### C.    The Executives Behind CFT and FxWinning

30.     Upon information and belief, Defendants Bastos, Cutie, and Cardenas are executives of CFT and FxWinning.

31.     Defendant Khan, during an onboarding video call with Matthew Elonis, introduced Defendant Bastos as founder and CEO of CFT and Defendant Cutie as the CEO of FxWinning.

32.     During the call, Defendant Khan explained the management structure of the Companies with the help of the following annotated photograph captioned "Great men with a greater vision to do something that has never been done before in the industry".



33.    Likewise, Defendant Bastos was introduced to Theodore Elonis as the CEO of CFT during a conference at which Defendant Bastos was giving a speech about "his technology".

34.    Upon information and belief, Defendant Cardenas is the Vice President of FxWinning.  In his role as Vice President, Cardenas exerted substantial control over FxWinning's activities.

**D.    The Role of Promoters – Toussaint, Khan, and Israel**

35.    The Elonis Brothers learned of CFT and FxWinning through Defendants Bastos, Toussaint, and Khan.

36.    Bastos represented to Theodore Elonis that CFT had partnered with FxWinning as CFT's designated broker and account manager.

37.    Toussaint, Khan, and Israel acted as promoters for CFT in its dealings with the Elonis Brothers.

38.    Toussaint and Khan held themselves out as representatives for CFT.

39.    Toussaint is closely involved with CFT.

   a.   In his capacity as CFT's representative, Toussaint had the ability to amend commission schedules involving CFT.

   b.   Toussaint represented to the Elonis Brothers that CFT had granted him the authority to onboard new investors.

   c.   Toussaint participated in a Companies' "summit" in the Bahamas with Bastos and Cutie.

40.    Kahn is closely involved with CFT.

   a.   Khan bragged about his close connection to CFT's executive Bastos to the Elonis Brothers.

    b.   During a video call with Matthew Elonis, Khan represented that he is one of ten people who is allowed to onboard investors in the Companies.

    c.   Khan participated in a Companies' "summit" in the Bahamas with Bastos and Cutie.

41.    Israel is closely involved with CFT.

    a.   Israel closely works with CFT's executive Bastos.

    b.   Israel participated in a Companies' "summit" in the Bahamas with Bastos and Cutie.

42.    Toussaint and Khan told the Elonis Brothers that CFT was a legitimate investment platform and directed the Elonis Brothers to open brokerage accounts on FxWinning to invest with CFT.

43.    Toussaint personally accepted a wire of more than $40,000 from Matthew Elonis, which Toussaint represented he then invested in CFT via FxWinning.

**E.**    **Plaintiffs' Accounts at FxWinning**

44.    Plaintiff Matthew Elonis opened an investment account with FxWinning in December 2022 (the "Matthew Account").

45.    Plaintiff Theodore Elonis opened an investment account with FxWinning in or about September 2022 (the "Theodore Account," and together with the Matthew Account, the "Accounts").

46.    Pursuant to the terms of the investment, the Elonis Brothers agreed to invest money in the Accounts held by FxWinning, subject to a right to withdraw any available funds from the Accounts upon request.

47.     Upon information and belief, FxWinning agreed to invest the Elonis Brothers' funds in return for a commission from the Accounts.

48.     Registration with FxWinning is conditional on the investor agreeing to terms and conditions, including a customer agreement (the "Customer Agreement").  *See also* Customer Agreement, Clause 3.1.  A copy of the Customer Agreement is attached here to as **Exhibit A**.

49.     FxWinning's Customer Agreement confirms that each investor has the "right to withdraw the [funds], upon request."  Customer Agreement, Clause 3.4.

50.     Similarly, Clause 14.3 of the Customer Agreement provides that the investor "may withdraw funds from the Trading Account at any time according to with [sic] clause 14.4."

51.     From September 2022 to January 2023, the Elonis Brothers transferred funds to their Accounts (the "Funds").  Over that period of time, the Elonis Brothers transferred more than $110,000 to their Accounts.

52.     The Elonis Brothers made multiple transfers of funds while located in Pennsylvania.

53.     FxWinning's website tracked the trades that FxWinning was allegedly making with the Funds and showed the Elonis Brothers earning money from those trades.

54.     In February 2023, the Elonis Brothers requested the return of their Funds from FxWinning.

55.     Specifically, the Elonis Brothers submitted requests to withdraw their Funds on or about February 6, 2023, and on or about February 18, 2023 (the "Withdrawal Requests").

56.     At the time of the Withdrawal Requests, the trade logs showed that the Accounts contained at least the balance of the Funds requested.

57.     Contrary to the terms of the terms of the investment, including the Customer Agreement, FxWinning refused the Withdrawal Requests, claiming that "high demand," liquidity issues, and other excuses prevented FxWinning from honoring the Elonis Brothers' requests. These excuses were false and without basis, and did not in fact excuse FxWinning's compliance with the withdrawal requests.

58.     FxWinning's customer support service raised a rotating series of excuses, first promising that they would return the Elonis Brothers' money in "5 to 7 business days," then that there would be a "slight delay," then that withdrawals would be "back to normal as soon as possible."

59.     Following FxWinning's refusal to grant their request, the Elonis Brothers contacted Toussaint to request a return of the Funds.

60.     Toussaint told the Elonis Brothers that he was "annoyed," that they should not request a return of their money, and that they "have got to chill out."

61.     On April 7, 2023, FxWinning posted its first apology about "recent delays in the withdrawal process" on its website. FxWinning claimed the delays were due to "newly implemented advanced KYC (Know Your Customer) and AML (Anti-Money Laundering) requirements."[9]

62.     Upon information and belief, FxWinning had invented the alleged "liquidity" and other excuses as mere pretexts to avoid granting investors' Withdrawal Requests.

63.     Upon information and belief, numerous other investors in FxWinning reported complaints against CFT and FxWinning.

---

[9] FxWinning Pro, News Page, https://www.fxwinning.pro/news?lang=en (last visited May 30, 2023).

64.     Any promises about accounts "normaliz[ing]" have proven to be false. In fact, on or about June 20, 2023, FxWinning announced that "due to unforeseen circumstances, [its] services will cease on Thursday 22.06.2023" and that "[w]ithdrawals will be open until Friday 30.06.2023."[10]

65.     To this date, the Companies are wrongfully holding the Funds belonging to the Elonis Brothers.

## <u>FIRST COUNT</u>
BREACH OF CONTRACT
(Plaintiffs v. FxWinning)

66.     Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

67.     Upon information and belief, the Elonis Brothers and FxWinning entered into an agreement governing the Elonis Brothers' investment in the Accounts (the "Investment Agreement").

68.     Pursuant to the Investment Agreement, the Elonis Brothers agreed to invest money in the Accounts held by FxWinning, subject to a right to withdraw all available funds from the Accounts upon request.  Upon information and belief, FxWinning agreed to invest the Funds in return for collecting a commission from the Accounts.

69.     The terms of the Agreement are reflected in FxWinning's terms and conditions, which include the Customer Agreement.

---

[10] FxWinning Net, Home Page, https://fxwinning.net/index_en.html (last visited July 7, 2023).

70.     Pursuant to Clause 1.2 of the Customer Agreement, the Customer Agreement and several other terms and policy documents contained on FxWinning's website constitute the entire agreement between FxWinning and the investor.

71.     The Investment Agreement is a valid and enforceable contract between each of the Elonis Brothers and FxWinning.

72.     Pursuant to the Investment Agreement, including Clauses 3.4 and 14.3 of the Customer Agreement, customers have the right to withdraw funds from their account at any time.

73.     In accordance with the Investment Agreement, including Clause 14.3 of the Customer Agreement, the Elonis Brothers submitted instructions to withdraw their Funds to FxWinning.

74.     According to Clause 14.4 of the Customer Agreement, once the investor gives instructions to withdraw, FxWinning "pay[s] the specified amount on the same day the withdrawal request was made, or the next business day if the [investor's] request is received outside of normal operations. hours. [sic]."

75.     Clause 14.4 of the Customer Agreement lists three requirements for a withdrawal: (i) the investor must include all required information on the withdrawal instructions; (ii) request for the money to be transferred to the investor's account; and (iii) the free margin of the investor's account must exceed the amount to be withdrawn.  The Elonis Brothers met all of the requirements in Clause 14.4 of the Customer Agreement.

76.     Once requested, FxWinning was obligated pursuant to the Investment Agreement to return the Funds to the Elonis Brothers by the next business day at the latest.

77.     The Withdrawal Requests by the Elonis Brothers were denied.

78.     Each time the Defendants denied or failed to honor the Withdrawal Requests to return the Funds the Defendants breached the terms of the Investment Agreement, including the Customer Agreement.

79.     The Companies continue to improperly retain the Funds to this date in violation of their contractual obligations pursuant to the Investment Agreement.

80.     As a direct result of FxWinning's breaches of the Investment Agreement, the Elonis Brothers have suffered, and continue to suffer, damages in excess of $70,000.00.

**SECOND COUNT**
FRAUDULENT INDUCEMENT
(Plaintiffs v. Defendants)

81.     Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

82.     As alleged herein, Defendants represented to the Elonis Brothers, among other things, that CFT and FxWinning were partners, that investing money with FxWinning was the exclusive means by which to gain access to CFT's trading platform, that CFT and FxWinning were operating successful companies, that Defendants would use investment funds to engage in Forex trading, and that investors could withdraw the funds invested in the Companies upon request (the "Representations").

83.     The Defendants' Representations were false and intended to deceive and mislead the Elonis Brothers as to the terms of the investment opportunity.

84.     Defendants, including Toussaint, Khan, Cutie, Cardenas, Israel, and Bastos, acting personally and as agents and executives of, and in concert with, CFT and FxWinning, fraudulently induced the Elonis Brothers to transfer funds to the Companies.

85.     As alleged herein, the Companies do not honor their own terms and improperly withhold investors' funds.

86.     As alleged herein, the Defendants knew that the Companies were operating under common ownership and were set up to defraud investors.

87.     In reliance on the Representations, the Elonis Brothers invested more than $110,000 in CFT through their FxWinning Accounts.

88.     The Representations were material to the Elonis Brothers transferring the Funds to the Companies as the Elonis Brothers would not have invested the Funds in the Companies without having received assurances about the terms and the legitimacy of the investment opportunity.

89.     The Elonis Brothers reasonably and justifiably relied on the Representations when they decided to enter into the Investment Agreement and deposited the Funds in their Accounts.

90.     The Representations were the reasonable, foreseeable, and proximate cause of the harm and damages that unnecessarily accrued to the Elonis Brothers.

91.     Defendants received substantial economic benefit from the Elonis Brothers investing the Funds in the Companies.

92.     The Defendants misconduct was willful, malicious, and wanton.  Defendants set up the Companies with the evil motive to defraud investors, such as the Elonis Brothers.

93.     As a result of Defendants' willful, malicious, and wanton conduct, the Elonis Brothers are entitled to a damages award of over $70,000.00, together with punitive damages, costs, and interest.

**THIRD COUNT**
VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES AND CONSUMER
PROTECTION LAW, 73 P.S. § 201-1 et seq.
(Plaintiffs v. Defendants)

94.     Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

95.     The Elonis Brothers bring this count pursuant to 73 P.S. § 201-9.2 of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which creates a private cause of action under that statute.

96.     Through the conduct described herein, Defendants committed false, misleading, and deceptive acts or practices in violation of the UTPCPL, 73 P.S. § 201-1 et seq., in connection with their use of a fraudulent investment scheme.

97.     As set forth above, Defendants engaged in unfair or deceptive acts or practices when they falsely represented to the Elonis Brothers—through their websites and direct marketing—that they use invested funds to engage in Forex trading, and investors could withdraw their funds upon request.  Defendants knew that such statements were false.  Instead, Defendants unlawfully retain unwitting investors' capital and do not return it upon withdrawal requests.

98.     Defendants' actions were intentional and fraudulent in their design to induce investors, such as the Elonis Brothers, to invest their funds in the Companies.  Defendants' fraudulent or deceptive conduct created a likelihood of confusion or of misunderstanding. Defendants violated the UTPCPL by engaging in such deceptive acts.

99.     The Elonis Brothers justifiably relied on the Defendants' Representations when making their decision to transfer the Funds to the Accounts.

100.     The Elonis Brothers have suffered actual damages in the amount of over $70,000.00 due to Defendants engaging in practices declared unlawful by the UTPCLP.

101.    The UTPCLP authorizes the Court, in its discretion, to award up to three times the actual damages sustained for violations plus attorney's fees and costs.  73 P.S. § 201-9.2.

102.    The Elonis Brothers are entitled to a damages award of over $70,000.00, together with an award of attorneys' fees and costs, treble damages, and any additional relief the Court deems necessary or proper.

**FOURTH COUNT**
VIOLATION OF THE EXCHANGE ACT AND RULE10b-5, 15 U.S.C. § 78j(b) AND 17
C.F.R. § 240.10b-5
(Plaintiffs v. Defendants)

103.    Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

104.    This claim is brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, against the Defendants.

105.    The Defendants: (a) employed devices, schemes and artifices to defraud, (b) made untrue statements of material fact, and (c) engaged in acts, practices and a course of business which operated as a fraud and deceit upon the Elonis Brothers, in violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

106.    As set forth above, the Defendants, individually and in concert, directly and indirectly, represented to the Elonis Brothers that the investment funds were held in accounts that would be used for Forex trading and investors could withdraw funds from the accounts at any time upon request.

107.    Defendants' Representations were material as the Defendants' fraudulent scheme consists of and relies on misrepresentations about the terms of investment.

108.    The Defendants' Representations were made in connection with the purchase of securities.  The Elonis Brothers invested money in a common enterprise, the Companies, with the expectation of future profits generated from the efforts of others.

109.     The Defendants acted with scienter in that they knew that the Companies did not intend to honor the terms of the investment and that the statements made to solicit funds from individual investors, such as the Elonis Brothers, were materially false and misleading.

110.      In ignorance of the falsity of the Defendants' Representations, the Elonis Brothers relied on the statements described above in transferring the Funds to the Accounts.

111.     Had the Elonis Brothers been aware of the Defendants' fraudulent scheme they would not have transferred the Funds to the Accounts.

112.     As a result of the wrongful conduct alleged herein, the Elonis Brothers have suffered economic damages in an amount to be established at trial.

113.     By reason of the foregoing, the Company and the individual defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Elonis Brothers for substantial damages which they suffered in connection with their investment in the Accounts.

### FIFTH COUNT
UNJUST ENRICHMENT
(Plaintiffs v. Defendants)

114.     Plaintiffs incorporate and reallege the paragraphs 1 to 70 and 72 to 113 as if fully set forth herein.

115.     As an alternative claim to the Elonis Brothers' breach of contract claim, should the Court find that the Investment Agreement is unenforceable, the Defendants will be unjustly enriched if they are allowed to retain the Funds.

116.     As set forth above, the Elonis Brothers transferred the Funds to the Companies through their Accounts.

117.     Defendants received the Funds.

118.     Defendants failed to return the Funds despite the Elonis Brothers' repeated requests in accordance with the Investment Agreement.

119.     Defendants retain the Funds to this date.

120.     It would be inequitable and unjust for Defendants to improperly retain the benefit of the Funds under the circumstances.

121.     As a result of Defendants' actions, the Elonis Brothers have suffered and continue to suffer damages.

122.     The Elonis Brothers are entitled to restitution from Defendants, plus costs and interest.

### SIXTH COUNT
CONVERSION
(Plaintiffs v. Defendants)

123.     Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

124.     As an alternative claim to the Elonis Brothers' breach of contract claim, the Defendants bring this claim for conversion.

125.      The Defendants, acting in concert with one another, intentionally set up the Companies with the intent to deprive investors, such as the Elonis Brothers, of their funds.

126.     In reliance on the Defendants' Representations, the Elonis Brothers transferred the Funds to the Accounts.  The Defendants received and accepted the Funds.

127.     The Elonis Brothers repeatedly requested the return of their Funds.  As set forth above, the Defendants wrongfully retain the Funds without lawful justification to this date.

128.     By failing and/or refusing to return the Funds to the Elonis Brothers, the Defendants have exercised unlawful dominion and control over the Elonis Brothers' property.

129.   The actions of the Defendants constitute an unlawful conversion of the Elonis Brothers' interest in the Funds since their intentional actions were done without justification and have deprived the Elonis Brothers of their interest and rights in the Funds.

130.   The Defendants acted knowingly and willfully in their dealings with the Elonis Brothers with the intention and foreseeable result of causing the Elonis Brothers to suffer economic harm.

131.   As a direct and proximate result of the unlawful conduct of the Defendants, the Elonis Brothers have sustained damages in the amount of the Funds, plus interest and costs.

**SEVENTH COUNT**
CIVIL CONSPIRACY
(Plaintiffs v. Defendants)

132.   Plaintiffs incorporate and reallege the paragraphs above as if fully set forth herein.

133.   As set forth above, CFT, FxWinning, Bastos, Cutie, Cardenas, Toussaint, Israel, and Khan acted with a common purpose to defraud potential investors.

134.   The Defendants' actions as detailed herein were done in pursuance of Defendants' common purpose.

135.   In furtherance of their common purpose, the Defendants set up the Companies as the vehicle for their fraudulent scheme.

136.   In furtherance of their common purpose, the Defendants solicited investors, such as the Elonis Brothers, with promises of an advanced investment platform and technology.

137.   As a direct and proximate result of the conspiracy by the Defendants, the Elonis Brothers were damaged as set forth in this Complaint.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Elonis Brothers respectfully request that this Court:

1.   Order that judgment be entered in the Elonis Brothers' favor;

2.  Order the Companies to release the Funds to the Elonis Brothers or else pay them
    the value of the Funds;

3.  Grant the Elonis Brothers an award of pre-judgment interest in an amount to be
    determined;

4.  Grant the Elonis Brothers an award of damages in an amount to be determined;

5.  Grant the Elonis Brothers an award of its attorneys' fees and costs incurred in this
    Action;

6.  Order punitive damages against the Defendants; and

7.  Award the Elonis Brothers such other and further relief as this Court may deem
    appropriate.

## JURY DEMAND

The Elonis Brothers request a trial by jury on all issues so triable.

Dated: July 12, 2023                    Respectfully submitted,

                                        **LATHAM & WATKINS LLP**

                                        _/s/ Gregory B. in den Berken_
                                        Gregory B. in den Berken (PA Bar No. 321964)
                                        555 Eleventh Street, NW
                                        Suite 1000
                                        Washington, D.C. 20004-1304
                                        Telephone: (202) 637-2163
                                        Email: greg.indenberken@lw.com

                                        Steven J. Pacini (_pro hac vice_ motion
                                        forthcoming)
                                        200 Clarendon Street, 27th Floor
                                        Boston, Massachusetts 02116
                                        Telephone: (617) 948-6000
                                        Facsimile: (617) 948-6001
                                        Email: steven.pacini@lw.com

                                        _Attorneys for the Elonis Brothers_

20

## <u>VERIFICATION</u>

I, Matthew Elonis, hereby verify under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: July 7th, 2023

*Matthew Elonis*

Matthew Elonis

## **VERIFICATION**

I, Theodore Elonis, hereby verify under penalty of perjury that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.


Dated: July 7th, 2023                                    _____

                                                                    Theodore Elonis